IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

SANDRA EVANS,                               :

      Plaintiff,                        :

vs.                                         :        CA 10-0600-WS-C

MOBILE COUNTY HEALTH                        :
DEPARTMENT,
                                            :
      Defendant.

## ORDER

This cause is before the Court on the defendant's motion to compel (Doc. 26), the plaintiff's objection and response (Doc. 30; *see also* Doc. 32), the defendant's response to plaintiff's objection and response (Doc. 35), defendant's motion to dismiss plaintiff's lawsuit as a sanction for intentional destruction of relevant evidence (Doc. 36), and plaintiff's response to the motion to dismiss (Doc. 39). This cause came on for a hearing before the undersigned on November 22, 2011. (*See* Doc. 38.) Upon consideration of the foregoing pleadings, with attachments, all other pertinent pleadings in this case, and plaintiff's testimony and the comments of counsel at the aforementioned hearing, this order is entered pursuant to 28 U.S.C. § 636(b)(1)(A) and Local Rule 72.2(a).[1]

---

[1] Although the defendant has requested the dismissal of plaintiff's lawsuit as a sanction for her intentional destruction of evidence, the critical issue in determining whether the undersigned has jurisdiction to issue an order, pursuant to § 636(b)(1)(A), or a report and recommendation to Chief Judge Steele, pursuant to § 636(b)(1)(B), "'is what sanction the magistrate judge actually imposes, rather than the one [preeminently] requested by the party seeking sanctions.'" *La Barbera v. ASTC Laboratories, Inc.*, 2007 WL 1423233, *1 (E.D. N.Y. May 10, (Continued)

## FACTUAL BACKGROUND

On November 17, 2010, plaintiff initiated this reverse discrimination and
retaliation action against defendant Mobile County Health Department ("MCHD")
pursuant to Title VII of the Civil Rights Act of 1964 and 42 U.S.C. § 1981. (*See* Doc. 1.)
Plaintiff has alleged that MCHD treated her less favorably than similarly-situated
African-American employees because of her race and that she was "set-up for
termination, in retaliation for her previous complaints of racism." (*Id*. at ¶¶ 5 & 6.)

A Rule 16(b) scheduling order was initially entered in this case on May 20, 2011
when this case was on the undersigned's opt-out docket (Doc. 11) but soon after this
case was transferred to Chief Judge Steele's docket (*see* Doc. 13), a supplemental

---

2007), quoting 12 CHARLES ALAN WRIGHT, ARTHUR R. MILLER & RICHARD L. MARCUS,
FEDERAL PRACTICE AND PROCEDURE § 3068.2 (2d ed. 1997); *see also Point Blank Solutions,
Inc. v. Toyobo America, Inc.*, 2011 WL 1456029, *3 (S.D. Fla. April 5, 2011) (noting that "[f]ederal
magistrate judges in this circuit frequently enter orders in cases where parties seek [dispositive]
sanctions, including default judgments or dismissals, for spoliation"). Because the undersigned
finds that the defendant's alternative request for other sanctions is due to be granted, and that
dismissal of plaintiff's lawsuit is not warranted, this non-dispositive ruling can be entered by
order under  § 636(b)(1)(A) and Local Rule 72.2(a). *Cf. Point Blank Solutions, Inc., supra*, at *3
("Because an adverse inference instruction does not strike a claim . . ., this is a non-dispositive
ruling that can be determined by a magistrate judge under Rule 72(a)."). Of course, both parties
have the option of seeking review of this order by Chief Judge Steele. *Compare* 28 U.S.C.
§ 636(b)(1)(A) ("A judge of the court may reconsider any pretrial matter under this
subparagraph (A) where it has been shown that the magistrate judge's order is clearly
erroneous or contrary to law.") *with* SD ALA LR 72.3(a) & (b) ("This rule applies to motions for
reconsideration referred to in 28 U.S.C. § 636(b)(1)(A)[.] . . . As provided in Fed.R.Civ.P. 72(a), a
party wishing to appeal an order entered by a magistrate judge in a nondispositive matter, that
is, those matters not excepted by 28 U.S.C. § 636(b)(1)(A), may file a 'Statement of Appeal of
Magistrate Judge's Order' within ten days after being served with a copy of the order, unless a
different time is established by order. . . . The appealing party shall submit to the district judge
at the time of filing the appeal a brief setting forth the party's arguments that the magistrate
judge's order is clearly erroneous or contrary to law.").

scheduling order was entered (Doc. 15). In pertinent measure, the June 17, 2011 supplemental scheduling order set a discovery deadline date of November 18, 2011 (*id.* at ¶ 2), noted that the issues subject to discovery were those set forth by the parties in paragraph 4 of the Rule 26(f) report (*id.* at ¶ 1),[2] and limited the parties to propounding no more than 25 interrogatories and requests for production of documents with responses due within thirty (30) days of service (*see id.* at ¶ 10).

On June 21, 2011, the defendant filed a response to a court request for information regarding preservation and production of electronically stored information ("ESI"). (Doc. 16.) The undersigned incorporated the defendant's ESI statement into the supplemental scheduling order on June 23, 2011. (Doc. 17.) With regard to potential ESI possessed by plaintiff, the undersigned addressed same in a footnote: "It does not appear that the defendant believes that plaintiff has in her possession any ESI. [] ***However, to the extent plaintiff is in possession of relevant ESI she should take steps to preserve same, as has the defendant, and produce same, upon proper request, to the defendant at her expense.***" (*Id.* at n.1 (emphasis supplied).)

The defendant served its first interrogatories and requests for production of documents on plaintiff on May 19, 2011. (*See* Doc. 26, Exhibits 1A & 1B.) In its request for production of documents, MCHD defined document to include "any medium that may be used to record, convey or store information, including but not limited to written

---

[2]     Paragraph 4 of the Rule 26(f) report simply provided that discovery would be needed on "[t]he plaintiff's [] claims and damages and the defendant's factual and legal defenses[.]" (Doc. 8, ¶ 4.)

or printed material, [and] all forms of electronically stored data[.]" (Doc. 26, Exhibit 1B, at ¶ B.)[3] The defendant, through its document production requests, sought all documents related to the allegations contained in the complaint, including damages (*see* Doc. 26, Exhibit 1B, at 3-4) and "[a]ll documents containing information [plaintiff] wrote or recorded in any manner related to [her] employment with MCHD or the allegations in [her] complaint, includ[ing,] but not limited to[,] any diary or notes [] recorded on the subjects." (*Id*. at 3.)

Over two months later, on July 26, 2011, plaintiff served what was entitled by her attorney as a combined response to the defendant's interrogatories and requests for production. (*See* Doc. 26, Exhibit 2.) In truth, as later asserted by defense counsel in numerous letters to plaintiff's counsel, the response was simply to the defendant's propounded interrogatories (*see id*.), as follows:

> 1.     I have not been employed since my termination.

> 2.     I have not had any employment income since my termination, and copies of my retirement and unemployment income information are attached.

---

[3]     The defendant served nine interrogatories on Evans and through same sought to establish the following: (1) the identity of all of her employers subsequent to the end of her employment with MCHD; (2) all sources of income she had received since her employment with MCHD ended; (3) the identity of any healthcare providers who provided her with treatment since January 1, 2005; (4) any persons with knowledge of the facts underlying the allegations contained in ¶ 5 of her complaint; (5) any persons with knowledge of the facts underlying the allegations contained in ¶ 6 of her complaint; (6) any persons with knowledge of the facts underlying the allegations contained in ¶ 7 of her complaint; (7) any persons with knowledge of the facts underlying the allegations contained in ¶ 8 of her complaint; (8) any persons with knowledge of the facts underlying the allegations contained in ¶ 9 of her complaint; and (9) any persons with knowledge of the facts underlying the allegations contained in ¶¶ 10, 12 and 15 of her complaint. (*See* Doc. 25, Exhibit 1A.)

      3.     Marion Sennett, MD. Mobile Adult Care, Mobile, Alabama. He prescribed Lexipro.

      4.     See attached narrative, which includes witness information.

      5.      See attached narrative, which includes witness information.

      6.     See attached narrative, which includes witness information.

      7.     See attached narrative, which includes witness information.

      8.     See attached narrative, which includes witness information.

      9.     See attached narrative, which includes witness information.

(*Id*. at 1-2; *see also* Doc. 26, Exhibit 2A (attached narrative).) Plaintiff's putatively combined response contains no objections to any interrogatory nor, obviously by omission, to any request for production of documents. (*See id*.) Although the presence of "ellipses" in the narrative appear to indicate that plaintiff excluded certain information (*see* Doc. 26, Exhibit 2A), as explained by plaintiff during the hearing on November 22, 2011, these "dots" are not, in truth, ellipses but, instead, simply represent the manner in which she recorded her thoughts.[4] On July 26, 2011, counsel for the defendant sent plaintiff's counsel the following letter:

      I received the faxed documents you provided, as well as a copy of Ms. Evans' responses to interrogatories. Please confirm that your previous fax, which includes eight pages of dated entries with a narrative at the end, is the "attached narrative, which includes witness information" Ms.

---

[4]     While the undersigned finds this particular portion of plaintiff's testimony credible, it does not explain away the one to three month gaps between entries that appear in the narrative. Given plaintiff's consistent testimony that she was very diligent in making almost daily entries to her narrative/diary, the Court finds (because of the foregoing gaps) that plaintiff did not produce the entirety of her narrative/diary as requested by the defendant.

> Evans is providing in response to several interrogatories. If so, please confirm that the "narrative" includes *complete* information responsive to the interrogatories. Finally, although the caption of the discovery response states the response also responds to our requests for production of documents, it does not include any such response. Please serve a response to the requests for production and confirm that the documents you have produced are *all documents* in Ms. Evans' possession or under her control responsive to the requests for production.

(Doc. 26, Exhibit 3 (emphasis in original).) Plaintiff's counsel did not respond to this letter. (Doc. 26, ¶ 5.) Therefore, counsel for the defendant again wrote plaintiff's counsel on August 10, 2011 requesting a response to defendant's request for production of documents since the only documents it had received consisted of just a few documents attached to the plaintiff's response to interrogatories and it being apparent to defense counsel that "Ms. Evans maintained a diary from which she prepared the narrative summary[.]" (Doc. 26, Exhibit 4.) Defense counsel requested that plaintiff's counsel respond to the defendant's request for production of documents and make all documents available for inspection by no later than Friday August 12, 2011. (*See id*.) Again, Evans' attorney did not respond to this letter. (Doc. 26, ¶ 6.)

Plaintiff's deposition was taken over the course of two days in September, specifically September 8-9, 2011. (Doc. 26, ¶ 7.) Evans produced a small number of documents at, or just prior to, her deposition, including the following: (1) a list of cell phone calls reflecting some of her complaints of alleged racially disparate treatment (*see* Doc. 26, Exhibit 5); and (2) a list of numerous prospective employers (*see* Doc. 26, ¶ 7).[5]

---

[5]    The list of prospective employers was prepared on her personal computer after the filing of the lawsuit and was produced as evidence of her alleged unsuccessful attempts to
(Continued)

6

On September 21, 2011, defense counsel penned the following lengthy letter to

plaintiff's counsel:

> On May 19, 2011, the Mobile County Health Department [] served a request for production of documents that included requests for Ms. Evans to produce all documents, including "all forms of electronically stored information" related to the allegations in paragraphs 5-10, 12 and 15 in her lawsuit complaint. . . . To date, Ms. Evans has not responded. I wrote you on several occasions to request a complete response, but no response was forthcoming. . . . At Ms. Evans' deposition on September 8th, I once again requested a complete response to the request for production. Once again, no response was forthcoming.

> Ms. Evans has produced a small number of documents, most of which she prepared specifically for the litigation during the past few months. During her deposition, Ms. Evans identified additional documents she apparently chose not to provide to you and not to produce, even though the documents she described clearly are within the scope of the request for production.

> Unless we receive a complete response to the request for production of documents, together with copies of all documents responsive to the request (MCHD will pay the reasonable cost of

---

seek alternative employment. The day before her deposition, plaintiff produced a supplemental narrative prepared on her personal computer after her lawsuit was filed which alleged facts not included in her original narrative and, as well, she produced her computation of the monetary damages she allegedly sustained because of her retirement. (*Compare* Doc. 36, at 5-6 *with* Doc. 36, Exhibit A, Deposition of Sandra Evans, Vol. I, at 250-256.) Plaintiff admitted during her deposition that she forwarded racially insensitive materials from her work computer to her home computer (*see* Evans' depot., Vol. I, at 113-129) and that she had emails on her home computer reflecting her complaints of disparate treatment on account of race which had not been provided to the defendant (*see id.*, Vol. II, at 19-22). Interestingly, despite this testimony, Evans never gave any hint during her deposition that her personal computer had been destroyed (*see id.*, Vol. I, at 113-129 & 250-256 and Vol. II, at 19-22; *compare id. with* Doc. 32, Affidavit of Sandra Evans).

Evans' deposition is also significant for her testimony that she kept patient labels she was required to prepare and maintain during her employment in a notebook at home as proof of the number of patients she saw on recorded dates versus the number of patients other nurses saw on the same dates. (*See* Doc. 36, at 6.)

reproduction, and we will pick up the documents at your office) before October 14, 2011, I will proceed with a motion to compel discovery and a request for sanctions. If documents are produced that include relevant information not previously disclosed, I will request the Court to allow us to reconvene Ms. Evans' deposition at her expense to afford the opportunity to question Ms. Evans about the documents.

Ms. Evans' deposition testimony reflects that the following documents exist, but have not been produced:

- Ms. Evans' entire diary/narrative from April 1, 2009 through the date of her response to the request for the production. It is apparent that Ms. Evans provided only selected *excerpts* from the "narrative" she incorporated by reference in her answers to most of MCHD's interrogatories. We are entitled to review the entire narrative, which Ms. Evans described in deposition as a contemporaneous account of her employment at the Women's Center (except for the last page, which she prepared after she filed the lawsuit). We are entitled to review entries in her narrative *after* she terminated her employment effective July 1, 2010, to obtain discovery on several relevant issues, including Ms. Evans' alleged efforts to seek alternative employment.

- The notebook and the MCHD patient labels Ms. Evans kept in the notebook, including the originals and all copies. Ms. Evans' deposition testimony indicates she *may* have removed patients' HIPPA-protected private information (patient labels) from the MCHD Women's Center to support the claims she later asserted in her EEOC charge and in this lawsuit (*that is*, she *may* have misappropriated patient information for her own benefit). Ms. Evans' current account (an account that *appears* to be contrary to her deposition testimony) is that she put the patient labels on a piece of paper at the Women's Center, copied the piece of paper with the patient labels affixed, and then used a black marker to redact what she deemed to be protected private information. MCHD is entitled to complete discovery responses on this issue. Even if Ms. Evans' latest version is true, the sheets you produced (two copies of the same sheets) both appear to be *copies*. Neither sheet appears to include the actual black marker redactions Ms. Evans allegedly made on the original sheet. MCHD

previously demanded the return of all patient labels and all copies of patient labels.

- Copies of all e-mails and other electronically stored information that reflect Evans' alleged complaints about her co-worker[s] and her supervisors at the MCHD Women's Center and her complaints to her former supervisor at the Bureau Director of Disease Control, Monica Knight. Ms. Evans testified she may have sent a number of e-mails on that subject to Monica Knight and that she may have done so as to other MCHD supervisors/executives.

- Ms. Evans' personal telephone records, including cell phone records (Ms. Evans identified her providers as AT&T and Boost), reflecting calls received or made by Evans during the entire time she worked at the Women's Center. As you know, the day before her deposition, Ms. Evans produced a recently-prepared list of alleged cell phone telephone calls to Monica Knight in which Ms. Evans allegedly reported "racism" at the Women's Center. Additionally, to the extent Ms. Evans complains about alleged disparate treatment based on the number of patients she saw each day, the cell phone records are relevant on the issue of whether Evans spent excessive time on personal cell phone calls during working times (as reported by MCHD employees).

- Ms. Evans admitted in deposition that she forwarded numerous e-mails that had been saved and stored on her MCHD computer to her personal computer at home. It is unclear whether she sent or received other e-mails from her home computer. Please produce a copy of all e-mails sent or received on her personal computer that are responsive to the request for production since April 1, 2009.

(Doc. 26, Exhibit 6 (emphasis in original).)[6] Although Evans' attorney did not make a

written response to this letter, following verbal communications he did agree to file a

---

[6] In this letter, defense counsel references an attached request for inspection of plaintiff's "personal computer and external storage devices to enable MCHD's designated information technology experts to inspect and retrieve all electronically-stored information (Continued)

9

written response to the defendant's request for production of documents. (*See* Doc. 26,

at 5-6.) This written response was finally accomplished on October 14, 2011. (Doc. 26,

Exhibit 7.)

> 1.      All documents in Plaintiff's possession have [been] produced. In addition, Plaintiff will produce copies of her cell phone records and a letter from the Retirement Systems on Monday, Oct. 17, 2011. She has already produced all diary entries and researched for additional e-mails. All documents forwarded to her home computer are already in your possession based on your statements at the deposition, and the only tax information she has received is also in the possession of the Department.

> 2.      All documents have been produced, and see number one above for additional documents.

> 3.      All documents have been produced, and see number one above for additional documents.

> 4.      All documents have been produced, and see number one above for additional documents.

> 5.      All documents have been produced, and see number one above for additional documents.

---

saved or maintained on the computers and on external storage devices to determine if e-mails or electronically-stored information responsive to [defendant's] request for production of documents have been withheld and whether Ms. Evans deleted or modified relevant e-mails or other electronically-stored information shortly before or after she filed her EEOC charge." (*Id.* at 3; *see also* Doc. 26, Exhibit 10 (defendant's request for inspection); *see* Doc. 22 (notice of service on plaintiff of defendant's request for inspection of plaintiff's personal computer(s).)) Plaintiff's counsel filed an objection to the request for inspection on September 27, 2011. (Doc. 23.) "[T]he request seeks information that is not reasonably calculated to lead to the discovery of admissible evidence within the perimeters of Rule 26, F.R.C.P. The request seeks to inspect emails contained on the Plaintiff's personal computer. Any emails that were sent to this computer from the Plaintiff's Mobile County Health Department's computer have already been identified by the Defendant. The information requested seeks to discover emails that are personal and confidential in nature." (*Id.*)

6.      All documents have been produced, and see number one above for additional documents.

7.      All documents have been produced, and see number one above for additional documents.

8.      All documents have been produced, and see number one above for additional documents.

9.      All documents have been produced, and see number one above for additional documents.

10.    None in Plaintiff's possession.

11.    None.

12.    None.

13.    See response [to] number 1 above.

(*Id*.)

Again, not fully satisfied with plaintiff's October 14, 2011 response, defense

counsel penned yet another letter to plaintiff's counsel, dated October 17, 2011,

outlining the deficiencies in plaintiff's response. (Doc. 26, Exhibit 8.)

> Once again, Ms. Evans has not complied with our request for production of documents as described in my September 21st letter. Specifically, Ms. Evans has *not* produced her cell phone records for the entire period she was employed by MCHD (April 9, 2009 through June 30, 2010[)] and she did *not* produce the letter she received from the Retirement Systems of Alabama. Ms. Evans' October 14, 2011 "Answers to Defendant's Request for Production" (answer to request no. 1) states that these documents were produced or would be produced on October 17th. The documents you provided today did not include these documents.

> With regard to Ms. Evans' cell records, including cell phone records "reflecting calls received or made by Evans during the *entire time* she worked at the Women's Center" from April 9, 2009 through June 30, 2010, we received **only portions of** her AT&T records as follows:

- April 13, 2009 through May 12, 2009;
- August 13, 2009 through November 12, 2009; and
- January 13, 2010 through February 12, 2010[.]

Ms. Evans did *not* produce her records for: May 13th through August 12, 2009; November 13, 2009 through January 12, 2010; or February 12, 2010 through June 30, 2010. Once again, Ms. Evans is *selectively* choosing the documents she *wishes* to produce. Additionally, Ms. Evans did not produce the letter from RSA. Accordingly, we will file a motion to compel these documents.

Finally, we will consider including your objection to MCHD's request for inspection of Ms. Evans' personal computer in the motion to compel. While her response to the request for production of documents states she "researched [her computer] for additional e-mails" (*See* response no. 1), she has a demonstrated practice of producing only those documents she chooses to produce, not all documents requested. MCHD is entitled to search the computer for additional relevant e-mails. Additionally, MCHD is entitled to determine whether Ms. Evans intentionally attempted to *delete* relevant e-mails (MCHD experts should be able to determine if she engaged in that effort and to retrieve the "deleted" e-mails) after she knew she was pursuing an EEOC charge and lawsuit against MCHD.

(*Id.* (emphasis in original).)

Following telephone communications between counsel of record, Evans

produced additional cell phone records (Doc. 26, ¶ 10) but she did not produce all such

records as reflected by defense counsel's letter of October 20, 2011. (Doc. 26, Exhibit 9.)

The cell phone records you delivered to us on October 19th did *not* include the following requested records:

From the 5/13/09-6/12/09 Billing- Pages 1-2 (5/13/09-5/23/09);
                                  Pages 4-5 (5/30/09-6/8/09);
                                  Page 7 (6/13/09)

From the 6/13/09-7/12/09 Billing- Pages 1-5 (6/13/09-7/5/09)
                                  Page 7 (7/10/09-7/12/09)

From the 7/13/09-8/12/09 Billing- All

From the 8/13/09-9/12/09 Billing- Pages 1-4 (8/13/09-9/3/09)
                                   Page 6 (9/12/09)

From the 9/13/09-10/12/09 Billing- Pages 1-2 (9/13/09-9/25/09)
                                    Page 4 (9/30/09-10/2/09)
                                    Pages 6-7 (10/6/09-10/12/09)

From the 10/13/09-11/12/09 Billing- Page 1 (10/13/09-10/17/09)
                                     Pages 3-5 (10/22/09-11/09/09)

From the 11/13/09-12/12/09 Billing- All

From the 12/13/09-1/12/10 Billing- All

From the 2/13/10-3/12/10 Billing- All

From the 3/13/10-4/12/10 Billing- All

From the 4/13/10-5/12/10 Billing- All

From the 5/13/10-6/12/10 Billing- All

From the 6/13/10-7/12/10 Billing- All (except for 7/1/10 through
                                   7/12/20 which we did not request)

We will proceed with the motion to compel production of these records.

        In addition, in response to your objection to our request for
inspection of Ms. Evans' personal computer, we will pursue the motion to
compel Ms. Evans to permit MCHD's retained expert to inspect the
computer. I trust Ms. Evans was advised of her legal obligation to
maintain all documents potentially relevant to her lawsuit claims,
including all e-mail and other electronically-stored information, and has
done so.

(*Id*. (emphasis in original).)

        MCHD filed its motion to compel on October 25, 2011 (Doc. 26) and the

undersigned took the motion to compel under submission on October 26, 2011 (Doc.

27).[7]  Plaintiff's counsel filed an objection and response on November 9, 2011 (Doc. 30),

same reading, in relevant part, as follows:

> 2.     With respect to the first item requested, Plaintiff's personal cell phone records, all such records in Plaintiff's possession have been produced prior to the motion to compel. Plaintiff does not object to producing these records, and has produced these records. Plaintiff does not have any records for some of the dates requested because she was changing carriers.
>
> 3.     With respect to Defendant's request to inspect her personal computer, Plaintiff timely objected to this request as it is irrelevant and seeks to review personal information not involved in this lawsuit. Defendant claims that this inspection is justified because Plaintiff forwarded e-mails from her MCHD computer to her home computer just before her resignation. However, MCHD admits it has copies of all of these e-mails, and Plaintiff was confronted with many of them during her deposition. Accordingly, there is no other potentially discoverable information on her home personal computer, and such request is well beyond the scope of discovery pursuant to Rule 26, F.R.C.P., as it is not reasonably calculated to lead to the discovery of admissible evidence. The undersigned has recently brought to the attention of opposing counsel that the Plaintiff's computer has been destroyed. The undersigned will file an affidavit of Plaintiff following this objection explaining the circumstances of this occurrence.

(Doc. 30, ¶¶ 2 & 3.) In her affidavit, Evans states she has no cell phone records for the

period May 13, 2010 through July 12, 2010 because she changed carriers "from AT&T to

Boost Mobile, which is a prepaid service, and [I] do not have them." (Doc. 32.) As for

---

[7]      On November 2-3, 2011, counsel for the parties exchanged a spate of emails and telephone conversations. (*See* Doc. 36, Exhibits E & F.) This email and telephone exchange, emanated from information plaintiff's counsel forwarded to defense counsel indicating that plaintiff destroyed the computer which contained the email information sought in the motion to compel. (*See id*.)

her personal computer, plaintiff states that defense counsel's September, 2011[8] request to inspect her home computer is impossible to accommodate since the 13-year-old computer "crashed sometime in June or July of 201[1]." (*Id.*)[9]

> I lost all information that was on it. I went to "Best Buy" and asked the "Geek Squad" about retrieving my data. I was told that in order for them to look at it, the cost would be $60.00, and then any work done to it would cost more. I was advised by these professionals to just buy another computer. I then burned my computer because over the years I had figured income taxes for others, and had much personal information including social security numbers, credit card numbers, banking information, etc. which I could not risk getting into the wrong hands because of the threat of identity theft.

(*Id.*)

On November 15, 2011, the defendant filed both a response to plaintiff's objection and response (Doc. 35)[10] and a motion to dismiss plaintiff's lawsuit as a

---

[8]     The affidavit mistakenly cites to September of 2010. At the November 22, 2011 evidentiary hearing, plaintiff made clear that the date was sometime in September of 2011, not September of 2010.

[9]     At the evidentiary hearing, Evans testified that she actually believes that her computer crashed during the latter part of July or the early part of August, 2011, not 2010 as reflected in her affidavit.

[10]     In the response, counsel for the defendant points out that throughout the discovery period, plaintiff produced the requested cell phone records in piecemeal fashion and that she did not produce the last three months of those records until November 9, 2011 (Doc. 35, at 2), some fifteen (15) days after the motion to compel was filed (*compare id. with* Doc. 26 (motion to compel filed October 25, 2011)). "MCHD clearly is entitled to an award of attorney's fees incurred in preparing the motion to compel that finally *prompted* Evans to complete the production of her cell phone records." (Doc. 35, at 2 (emphasis in original).) As for all ESI, including emails, defendant reiterates that it is not seeking plaintiff's personal information off her computer but merely relevant information related to her complaints of racism, her efforts to find alternative employment, information reflecting her personal racial bias against African-Americans, and her "narrative" summary of her employment at MCHD. (*Id.* at 3.) Defendant goes on to argue that although plaintiff contends that it is impossible for her to turn over emails in light of her destruction of her computer, since Evans continues to "maintain and use the same (Continued)

sanction for her intentional destruction of relevant evidence (Doc. 36). After the undersigned set this matter down for a hearing (Doc. 38), plaintiff filed a response to the motion to dismiss, therein arguing that her case should not be dismissed since lesser sanctions (if, indeed, any sanctions are advisable) will suffice to address plaintiff's conduct (*see* Doc. 39).

The focus of the evidentiary hearing on November 22, 2011 was plaintiff's destruction of her personal computer, including the information stored therein (including, her diary/narrative and emails), and the patient labels she took home from work. Plaintiff testified she did not take the original sheets of labels home, only photocopies of two sheets of labels. It was Evans' testimony that she left the original pages containing the original labels in a notebook at work and that she later placed this notebook in a bin at work to be shredded. According to Evans, the notebook she was referring to in her deposition was a notebook she still has at home and in which she still has the photocopied pages of labels with all "HIPPA" information redacted. As for her narrative and emails, plaintiff testified that she had given her attorney every portion of her narrative and all relevant emails from her personal computer, that is, the computer

---

e-mail address she previously used on a destroyed computer  *—candyevans@gmail.com--*" this Court should order plaintiff "to produce all e-mails from her personal e-mail account on '*gmail.com*' which would be available through the provider regardless [of] when Evans destroyed her computer." (*Id.* at 4.) Finally, defendant contends that this Court should order plaintiff "to produce her *new* computer for inspection because there is no reason to believe Evans has not continued to create and maintain relevant electronically-stored information on her new computer." (*Id.* (emphasis in original),)

that was destroyed, and that it was her understanding that all such information had been produced to the defendant.[11]

As for the actual destruction of the computer, plaintiff testified that her personal computer crashed and that she destroyed it in her yard (by burning it) during the latter part of July of 2011 or early August, 2011. Plaintiff testified that she chose to destroy her computer, rather than simply keep it alongside her new computer—which she interestingly purchased in October of 2011[12]—, because she wanted to prevent someone from accessing the years of tax information (hers and others) she had on her computer. Given that plaintiff knew enough about computers to know someone could access the information/data on her computer even though it had "crashed," the undersigned finds

---

[11]    For reasons set out in more detail, *infra*, the undersigned finds plaintiff's testimony in this regard not credible; her testimony about the emails is not credible because it is directly contrary to her deposition testimony. Moreover, while the undersigned did believe Evans' testimony that the "dots" in her narrative simply represented her manner of keeping her narrative/diary, her testimony that she provided the defendant with the entirety of her narrative/diary cannot be squared with her testimony that she made almost daily entries in her narrative/diary given that there are gaps of one and three months reflected on the face of the narrative. In other words, these gaps in the narrative fly in the face of plaintiff's testimony that she made almost daily entries to her narrative/diary and establish, in the undersigned's opinion, that plaintiff did not provide the defendant with the entirety of that document.

[12]    Plaintiff's testimony that she destroyed her personal computer in late July, 2011 to early August, 2011 and did not purchase her new computer until October of 2011 fails on one end or the other given the fact that she produced at her September, 2011 deposition the following computer-generated items: (1) a supplemental narrative that provided facts not included in her original narrative prepared shortly before her deposition; (2) a list of prospective employers from who she sought employment; and (3) monetary damages she sustained.

that plaintiff fully appreciated that she could have transferred the information from her "crashed" computer to the new computer she purchased.[13]

In an attempt to explain her failure to mention the destruction of the computer at her deposition in September of 2011, as well as her deposition testimony that she had on her personal computer emails wherein she complained of disparate treatment on account of her race, plaintiff testified at the November 22, 2011 hearing before the undersigned that her deposition testimony was based upon her ability to access her emails on her gmail.com account from another computer. In addition, she testified that she has copies of some emails in a filing cabinet at home. While this is all well and good and, if believed, would explain (perhaps) why plaintiff did not offer during her deposition that she had destroyed her personal computer, it does not explain away her unequivocal deposition testimony that she possessed emails wherein she complained of disparate treatment on account of her race. Plaintiff's additional testimony that she did not believe any of the emails she can access from her Gmail account for the last couple of years are relevant again flies in the face of her unequivocal deposition testimony. Evans has not produced any emails on this subject to defendant and cannot simply state that she does not believe the emails she could access from her gmail.com account, or find in the filing cabinet in her house, are not relevant given her failure to review such email information.

---

[13]    The fact that Evans destroyed her computer, instead of preserving same or transferring the information on that computer to a new computer, is unfathomable given that she was in the middle of pursuing this lawsuit and she had on her home computer items crucial to her suit, including her narrative/diary and relevant emails.

Finally, although plaintiff testified that she was unaware of a court obligation not to destroy evidence and that she did not intentionally destroy her computer to cover-up unfavorable evidence, she also admitted that her attorney told her to preserve all relevant documents regarding her complaints of racial discrimination, which, of course, would include the emails she mentioned during her deposition.

In sum and substance, the undersigned gives very little credence to plaintiff's testimony at the hearing on November 22, 2011 given the "whirling dervish" nature of same.

## CONCLUSIONS OF LAW

**A.     Defendant's Motion to Compel (Doc. 26)**.  Rule 26(b)(1) of the Federal Rules of Civil Procedure provides that a party may obtain discovery "regarding any nonprivileged matter that is relevant to any party's claim or defense[.]" Fed.R.Civ.P. 26(b)(1). Under this rule, relevancy has been "construed broadly to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case." *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351, 98 S.Ct. 2380, 2389, 57 L.Ed.2d 253 (1978). However, the scope of discovery is not without limits, the Supreme Court itself recognizing that "'discovery, like all matters of procedure, has ultimate and necessary boundaries.'" *Id.*, quoting *Hickman v. Taylor*, 329 U.S. 495, 507, 67 S.Ct. 385, 392, 91 L.Ed. 451 (1947). Certainly, for instance, "[d]iscovery of matter not reasonably calculated to lead to the discovery of admissible evidence is not within the scope of Rule 26(b)(1)." *Id.* at 351-352, 98 S.Ct. at 2390 (internal quotation marks omitted); *cf. Washington v. Brown & Williamson Tobacco Corp.*, 959 F.2d 1566, 1570

(11th Cir. 1992) ("The scope of discovery in Title VII cases is not without limits. The information sought must be relevant and not overly burdensome to the responding party." (internal footnote omitted)). More to the point, "'[n]o one would suggest that discovery should be allowed of information that has no conceivable bearing on the case.'" *Food Lion, Inc. v. United Food & Commercial Workers Int'l Union, AFL-CIO-CLC*, 103 F.3d 1007, 1012 (D.C. Cir. 1997), quoting 8 WRIGHT, MILLER & MARCUS, FEDERAL PRACTICE AND PROCEDURE CIVIL 2d § 2008, pp. 105-06 (1994); *see also In re Fontaine*, 402 F.Supp. 1219, 1221 (E.D.N.Y. 1975) ("While the standard of relevancy is a liberal one, it is not so liberal as to allow a party 'to roam in shadow zones of relevancy and to explore matter which does not presently appear germane on the theory that it might conceivably become so.'" (citation omitted)). Indeed, "[t]he relevancy requirement 'should not be misapplied so as to allow fishing expeditions in discovery.'" *United States v. Lake County Bd. of Commissioners,* 2006 WL 1660598, *1 (N.D. Ind. June 7, 2006) (quoting *Zenith Electronics Corp. v. Exzec, Inc.,* 1998 WL 9181, *2 (N.D. Ill. Jan. 5, 1998)), *aff'd*, 2006 WL 2051729 (N.D. Ind. July 20, 2006).

In this case, through its motion to compel, with attachments (Doc. 26), and its response to plaintiff's objection and response (Doc. 35), as exhaustively set forth above, the defendant has not only established the relevancy of the documents/data/inspection sought but, as well, has established its entitlement to a granting of its motion to compel (Doc. 26). Rule 37(a)(3)(B) of the Federal Rules of Civil Procedure reads, in relevant part, as follows:

A party seeking discovery may move for an order compelling an answer, designation, production, or inspection. This motion may be made if:

.      .      .

(iii)    a party fails to answer an interrogatory submitted under Rule 33; or

(iv)    a party fails to respond that inspection will be permitted—or fails to permit inspection—as requested under Rule 34.

*ld.* In addition, if a motion to compel is granted, "the court **must,** after giving an opportunity to be heard,[14] require the party or deponent whose conduct necessitated the motion, the party or attorney advising that conduct, or both to pay the movant's reasonable expenses incurred in making the motion, including attorney's fees." Fed.R.Civ.P. 37(a)(5)(A) (emphasis supplied; footnote added).

Although the defendant is now in possession of all of plaintiff's cell phone records (*see* Doc. 26, at 1 (relief requested in motion to compel)), it did not come into possession of the last of these records until after the filing of the motion to compel. Moreover, it was not until after the filing of the motion to compel that plaintiff's destruction of her computer came to light, along with the knowledge that it would be impossible for defendant's designated information technology expert(s) to inspect that computer and retrieve all relevant electronically-stored information related to plaintiff's

---

[14]    The plaintiff and her attorney were extended the opportunity to respond to the defendant's request for attorney's fees (*compare* Doc. 26 (first page of motion to compel contains a request for payment of reasonable attorneys' fees and expenses incurred by MCHD in obtaining an order on the motion to compel) *with* Doc. 27 (establishing a submission date for the motion to compel)) yet have done nothing to establish that an award of expenses (including attorney's fees) would be unjust.

employment with MCHD and her efforts to obtain employment after her alleged

constructive discharge. (*See id.* (other requested relief).) As previously indicated at some

length, the undersigned is convinced that Evans' computer contained additional

relevant information in the form of emails (whether related to her complaints of

"racism," her attempts to find alternative employment, or evidencing her personal

racial bias) and the "gaps" in her (almost) daily narrative/diary. Although plaintiff's

destruction of her computer leaves no avenue for the defendant to obtain the remainder

of plaintiff's narrative/diary, the same is not true for potentially relevant email

information since Evans continues to maintain and use the same email address she used

on her destroyed computer, that is, candyevans@gmail.com (*see* Doc. 35).

Based on the foregoing, the defendant's motion to compel (Doc. 26) is

**GRANTED** and, prior to **February 28, 2012**, when this case will come on for a

supplemental scheduling conference,[15] plaintiff and/or her attorney must do the

following:

(1)     Produce to the defendant all emails from her personal email account on

"gmail.com" that would be available through the provider regardless of when the

computer was destroyed;

(2)     Produce to the defendant the computer purchased in October of 2011 to

replace the one plaintiff destroyed so that defendant's IT expert(s) can recover

---

[15]     At this conference, the undersigned plans to discuss with the parties their remaining discovery needs, including whether the defendant desires to reconvene plaintiff's deposition.

therefrom all relevant electronically-stored information, along with documentation reflecting that the new computer was, in fact, purchased in October of 2011;

(3)    Produce to the defendant the notebook in which plaintiff has all of the "copied" sheets of patient labels, along with each and every copy of those sheets of labels; and

(4)    Pay all reasonable attorney's fees and expenses associated with the filing of the motion to compel (Doc. 26) and the response (Doc. 35).[16]

**B.    Defendant's Motion to Dismiss as a Sanction for Plaintiff's Intentional Destruction of Relevant Evidence (Doc. 36).**    When plaintiff's destruction of her personal computer came to light after the filing of the defendant's motion to compel, the defendant filed the instant motion and specifically requested that plaintiff be sanctioned in the following manner: "(i) [entry of an order] *dismissing* Evans' lawsuit with prejudice or, in the alternative, imposing such other sanctions as the Court may deem proper; and (ii) requiring Evans to pay the reasonable expenses, including attorney's fees, incurred by MCHD to prepare the motion to compel filed by MCHD on October

---

[16]    It is the undersigned's specific order that plaintiff pay the defendant's reasonable attorney's fees and expenses. In this regard, defendant is to make application for such fees and expenses not later than **January 31, 2012**.  The defendant should in some manner attach to such application for attorney's fees, in particular, a list of professional services rendered, the date those services were performed, who performed those services, and the normal hourly rate billed by that individual to similar clients. In other words, the defendant must properly document the appropriate hours expended and hourly rates so that the undersigned can readily determine that the amount claimed by defendant with respect to work performed on the motion to compel is, in fact, reasonable.

25, 2011[17] [] and to prepare this motion for sanctions." (Doc. 36, at 1 (emphasis in original; footnote added).)

"'Spoliation' is the 'intentional destruction, mutilation, alteration, or concealment of evidence.'" *Swofford v. Eslinger,* 671 F.Supp.2d 1274, 1279 (M.D. Fla. 2009) (citations omitted). In *Flury v. Daimler Chrysler Corp.,* 427 F.3d 939 (2005), *cert. denied,* 548 U.S. 903, 126 S.Ct. 2967, 165 L.Ed.2d 950 (2006), the Eleventh Circuit held that federal law governs the imposition of spoliation sanctions since "spoliation sanctions constitute an evidentiary matter." 427 F.3d at 944 (citations omitted). Even though federal law governs, because the Eleventh Circuit has not set forth specific guidelines for imposition of spoliation sanctions, "courts may look to state law principles for guidance so long as the principles are consistent with [general] federal spoliation principles [that do exist]." *Southeastern Mechanical Services, Inc. v. Brody,* 657 F.Supp.2d 1293, 1299 (M.D. Fla. 2009); *see also Flury,* 427 F.3d at 944 (examining spoliation factors enumerated in Georgia law since the Eleventh Circuit had not set forth specific guidelines and Georgia law on the subject was wholly consistent with federal spoliation principles and also recognizing that since dismissal represents the most severe sanction available to a federal court it should only be exercised where there is a showing of bad faith and where lesser sanctions will not suffice). This is true even in actions brought under Title

---

[17]     The undersigned has already indicated that the plaintiff is to pay to the defendant all reasonable fees associated with the filing of the motion to compel (Doc. 26) and response (Doc. 35); therefore, this portion of the undersigned's order will only address the defendant's request for fees and expenses associated with the filing and prosecution of the motion to dismiss as a sanction for spoliation of evidence (Doc. 36).

VII of the Civil Rights Act of 1964, like the present lawsuit. *See, e.g., Santana v. RCSH Operations, LLC,* 2011 WL 688723, *1-2 (S.D. Fla. Feb. 18, 2011).

The Alabama Supreme Court has applied the following five factors in analyzing a request for spoliation sanctions: "(1) the importance of the evidence destroyed; (2) the culpability of the offending party; (3) fundamental fairness; (4) alternative sources of the information obtainable from the evidence destroyed; and (5) the possible effectiveness of other sanctions less severe than dismissal." *Story v. RAJ Properties, Inc.,* 909 So.2d 797, 802-803 (Ala. 2005) (citation omitted).[18]

> Although the Eleventh Circuit has looked to state law in analyzing spoliation of the evidence, the Eleventh Circuit has also outlined the boundaries of sanctionable conduct under federal law. In *Flury,* the Eleventh Circuit explained that dismissal is the most severe sanction available, and should only be used where there is a showing of bad faith and where lesser sanctions will not suffice.[19] In describing the standard governing bad faith, the Eleventh Circuit explained that the law does not require a showing of malice, but that instead, in determining whether there is bad faith, a court should weigh the degree of the spoliator's culpability against the prejudice to the opposing party.

---

[18]   These factors are similar to the Georgia factors which the Eleventh Circuit found wholly consistent with federal spoliation principles. *Compare id. with Flury, supra,* 427 F.3d at 945 ("According to Georgia law, spoliation of critical evidence may warrant the imposition of sanctions such as exclusion of certain evidence or outright dismissal of the case. In determining whether dismissal is warranted, the court must consider: (1) whether the defendant was prejudiced as a result of the destruction of evidence; (2) whether the prejudice could be cured; (3) the practical importance of the evidence; (4) whether the plaintiff acted in good faith or bad faith; and (5) the potential for abuse if expert testimony about the evidence was not excluded." (internal citation omitted)). Indeed, the Alabama factors appear to encompass the Eleventh Circuit's bad faith and "no lesser sanction" requirements.

[19]   In *Bashir v. Amtrak,* 119 F.3d 929, 931 (1997), the Eleventh Circuit also clearly held that "an adverse inference is drawn from a party's failure to preserve evidence only when the absence of that evidence is predicated on bad faith." *See also Point Blank Solutions, Inc., supra,* at *1 ("In this Circuit, a court cannot give an adverse inference jury instruction . . . as a sanction for spoliation of documents or other discovery information, including emails, unless there is evidence of bad faith.").

*Ray v. Ford Motor Co.*, 792 F.Supp.2d 1274, 1279 (M.D. Ala. 2011) (internal citations omitted; footnote added).   "Sanctions the Court may impose against a [party] for spoliation include, but are not limited to, the following: default judgment[/dismissal], adverse inference or rebuttable presumption instructions to the jury, striking pleadings, and an award of fees and costs incurred by the injured party as a result of the spoliation." *Swofford, supra,* 671 F.Supp.2d at 1280, citing *Flury,* 427 F.3d at 945.

There can be little doubt that the evidence on plaintiff's destroyed computer was important because it would have filled in the month-long gaps in her narrative/diary, it would have reflected more fully on her efforts to obtain employment after her alleged constructive discharge from MCHD, it would have painted a clearer picture of her alleged racial bias against African-Americans, and it would have reflected her alleged complaints about racism to co-employees and supervisors at MCHD. In addition, with respect to at least some of this information (for example, the missing pieces of plaintiff's daily narrative) there is no way to otherwise obtain the evidence. While some of this material may be able to be retrieved from plaintiff's "gmail.com" account, there is no guarantee that any of this evidence will, in fact, be retrieved from that account. However, it is also true that the defendant does possess a portion of plaintiff's narrative and evidence reflecting plaintiff's alleged personal racial bias against African-Americans. Accordingly, the undersigned would necessarily have to conclude that the importance and alternative source factors referenced above weigh slightly in favor of the defendant in regard to its request for dismissal of this action.

As reflected in the factual background discussion above, Evans' level of culpability is excessively high. After all, she burned her personal computer after she filed her lawsuit against MCHD and an order was entered by this Court that she was to take steps to preserve all relevant electronically-stored information in her possession.[20] *Cf. Point Blank Solutions, supra,* at *11 ("A party has an obligation to retain relevant documents, including emails, once litigation is reasonably anticipated."). That Evans knew she had relevant information on her computer cannot be gainsaid based on her production of portions of her narrative and other information at (or prior to) her deposition and her deposition testimony that she possessed on her computer emails which reflected her complaints of racism to others working at MCHD. Plaintiff's failure to notify the defendant at her deposition that her computer had been destroyed simply begs the question of whether her destruction of same occurred before or after her deposition. Even if it was destroyed before her deposition, however, plaintiff identified no viable reason for taking such action as opposed to simply retaining it pending conclusion of this case or transferring the information on that computer to the new computer she allegedly purchased in October of 2011. Finally, combining the high degree of plaintiff's culpability with the fact that defendant has established it has been prejudiced by Evans burning her computer by not having a full picture either of

---

[20]    Even if plaintiff was not given a copy of this order by her attorney, it is clear that plaintiff was instructed by her attorney to preserve all relevant information in her possession regarding this lawsuit. Moreover, given plaintiff's questionable credibility regarding other matters, the undersigned finds that her attorney indeed instructed plaintiff to preserve all relevant emails in her possession.

plaintiff's employment at MCHD, given the gaps in her daily narrative and lack of emails related to her alleged complaint of racism and her alleged racial bias towards African-Americans, or her attempts to garner alternative employment after her alleged constructive discharge, *compare Brody, supra,* 657 F.Supp.2d at 1300 ("The substantial and complete nature of the destruction of evidence by the spoliator justifies a finding that the destroyed evidence prejudiced a [defendant].") *with Brown v. Chertoff,* 563 F.Supp.2d 1372, 1379 (S.D. Ga. 2008) ("To require a party to show, before obtaining sanctions, that *unproduced* evidence contains damaging information would simply turn 'spoliation law' on its head."), the undersigned is led to the inexorable conclusion that plaintiff is guilty of bad faith.[21] Stated differently, plaintiff's willful disregard of her obligation to preserve evidence has inhibited the production of evidence that may have been harmful to her case such that whether the spoliated evidence would, in fact, have been detrimental is irrelevant since no one, other than perhaps Evans herself, can know for certain. *See Telectron, Inc. v. Overhead Door Corp.,* 116 F.R.D. 107, 133 (S.D. Fla. 1987) ("[W]hile it is now impossible to determine precisely what or how many documents were destroyed, the bad faith destruction of a relevant document, by itself, 'gives rise to a strong inference that production of that document would have been unfavorable to the party responsible for its destruction.'").

---

[21]     Thus, the second and third factors identified in *Story, supra,* clearly weigh in favor of the defendant and its request for dismissal.

The last factor to consider is whether lesser sanctions than dismissal would suffice in this case. The undersigned concludes that lesser sanctions will suffice simply because this is not a case in which the destruction of evidence has left the defendant in the position that it is unable to defend itself against plaintiff's allegations, as appears to be the case where dismissal has been warranted. *See Flury, supra,* 427 F.3d at 943 ("This case hinges upon the significance of the evidence destroyed, and upon the extreme prejudice the defendant suffered as a result. . . . Plaintiff failed to preserve an allegedly defective vehicle in a crashworthiness case. The vehicle was, in effect, the most crucial and reliable evidence available to the parties at the time plaintiff secured representation and notified defendant of the accident. By the time plaintiff filed suit, years after the accident had taken place, plaintiff had allowed the vehicle to be sold for salvage despite a request from defendant for the vehicle's location. For these reasons, we believe the resulting prejudice to the defendant incurable, and dismissal necessary"). Here, the defendant not only has a portion of plaintiff's narrative/diary and emails reflecting plaintiff's racial bias against African-Americans but, as well, has (or will have) the testimony/affidavits of plaintiff's co-workers and supervisors to counter the allegations Evans has made in her complaint. Therefore, dismissal is not warranted; instead, the undersigned finds that the following sanctions are warranted: (1) should plaintiff survive the defendant's anticipated summary judgment, an adverse inference instruction should be crafted and given by Chief Judge Steele regarding Evans' failure to preserve data on her personal computer which would have been favorable to MCHD and unfavorable to the plaintiff; and (2) an award of attorney's fees and expenses

29

incurred by the defendant in filing (and pursuing) its motion to dismiss the lawsuit as a sanction for intentional destruction of relevant evidence (Doc. 36). Again, plaintiff herself must pay  these attorney's fees and expenses prior to the February 28, 2012 supplemental scheduling conference.[22]

Should the plaintiff in any manner fail to satisfy the requirements of this order, it will be the undersigned's recommendation that this action be dismissed due to her failure to prosecute and obey the lawful orders of this Court.  *See, e.g., Environmental Biotech, Inc. v. Sibbitt Enterprises, Inc.*, 2007 WL 2993997, *2 (M.D. Fla. Oct. 11, 2007) ("The authority of a federal court to dismiss a plaintiff's action with prejudice because of h[er] failure to prosecute cannot seriously be doubted. The power to invoke this sanction is necessary in order to prevent undue delays in the disposition of pending cases and to avoid congestion in the calendars of District Courts.").

---

[22]    The defendant is to make application for such fees and expenses not later than **January 31, 2012**.  Again, the defendant should in some manner attach to its application for attorney's fees directed to its motion to dismiss (Doc. 36), a list of professional services rendered, the date those services were performed, who performed those services, and the normal hourly rate billed by that individual to similar clients. In other words, the defendant must properly document the appropriate hours expended and hourly rates so that the undersigned can readily determine that the amount claimed by defendant with respect to work performed on the motion to dismiss is, in fact, reasonable.

## <u>CONCLUSION</u>

Defendant's motion to compel (Doc. 26) is **GRANTED** and its motion to dismiss plaintiff's lawsuit as a sanction for intentional destruction of relevant evidence (Doc. 36) is **GRANTED IN PART** and **DENIED IN PART**. This latter motion is denied to the extent defendant seeks dismissal of plaintiff's lawsuit but it is granted to the extent the defendant seeks sanctions alternative to dismissal of this action.

**DONE** and **ORDERED** this 24th day of January, 2012.

   s/WILLIAM E. CASSADY          
**UNITED STATES MAGISTRATE JUDGE**